**Ervin HEARD, Plaintiff,**

v.

**Bibb County Sheriff Keith HANNAH, in his official capacity, Defendants.**

Case No. 7:13–CV–1998–VEH.

United States District Court, N.D. Alabama, Western Division.

Signed Sept. 24, 2014.

Albert J. Osorio, Law Offices of Albert J. Osorio, Birmingham, AL, for Plaintiff.

Jamie Helen Kidd, Webb & Eley PC, Montgomery, AL, for Defendants.

## *MEMORANDUM OPINION*

VIRGINIA EMERSON HOPKINS, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983, in which the plaintiff, Ervin Heard, brings claims against the Bibb County, Alabama, Sheriff, Keith Hannah, in his official capacity, alleging violations of the Fourteenth Amendment, and under Alabama state law, in connection with the termination of the plaintiff's employment. (Doc. 1). The case comes before the court on Hannah's motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss all claims for money damages due to lack of subject-matter jurisdiction, and, pursuant to Rule 12(b)(6), to dismiss all other causes of action for failure to state a claim upon which relief may be granted. (Doc. 12). Also included in Hannah's filing is a Rule 12(f) motion to strike certain allegations of the plaintiff's pleading, as well as a demand for attorney's fees under 42 U.S.C. § 1988.

On August 28, 2014, the magistrate entered a report and recommendation and recommended:

> [T]hat Defendant Hannah's motion (Doc. 12) be **DENIED** to the extent it asks the court to strike certain allegations of the Amended Complaint pursuant to FED. R. CIV. P. 12(f), be **GRANTED** insofar as it seeks dismissal of Plaintiff's claims for damages and backpay for lack of jurisdiction under FED. R. CIV. P. 12(b)(1); be **GRANTED** insofar as seeks dismissal of all remaining claims pursuant to FED. R. CIV. P. 12(b)(6); and be **DENIED** as it relates to an award of attorney fees under 42 U.S.C. § 1988.

(Doc. 19 at 1147) (emphasis in original). The time for objections to the recommendation has expired and no objections have been filed by any party.

Having carefully reviewed and considered de novo all the materials in the court file, including the report and recommendation, the court is of the opinion that the magistrate judge's report is due to be and is hereby **ADOPTED** and his recommendation is **ACCEPTED.** The Court **EXPRESSLY FINDS** that plaintiff's claims for damages and backpay are due to be dismissed for lack of subject matter jurisdiction, and that his remaining claims are due to be dismissed because they fail to state a claim upon which relief may be granted.[1] The court also finds that no allegations in the amended complaint are due to be stricken and no attorney's fees should be awarded.

An order of dismissal will be entered.

**DONE** and **ORDERED.**

### ORDER

The case comes before the court on the defendant's motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss all claims for money damages due to lack of subject-matter jurisdiction, and, pursuant to Rule 12(b)(6), to dismiss all other causes of action for failure to state a claim upon which relief may be granted. (Doc. 12). Also included in the defendant's filing is a Rule 12(f) motion to strike certain allegations of the plaintiff's pleading, as well as a demand for attorney's fees under 42 U.S.C. § 1988.

In accordance with the memorandum opinion entered contemporaneously herewith, it is hereby **ORDERED, ADJUDGED,** and **DECREED** as follows:

1. The magistrate judge's report is due to be and is hereby **ADOPTED** and his recommendation is **ACCEPTED** as amplified by the Memorandum Opinion filed contemporaneously herewith;

2. To the extent that the motion seeks to strike certain allegations in the plaintiff's pleadings, and requests an award of attorney's fees it is **DENIED;**

3. In all other respects, the motion is **GRANTED;** and

4. This case is **DISMISSED with prejudice.**

### REPORT AND RECOMMENDATION

JOHN E. OTT, United States Chief Magistrate Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. In his now-governing Amended Complaint, Plaintiff Ervin Heard brings claims against the Bibb County, Alabama, Sheriff, Keith Hannah, in his official capacity, alleging violations of the Fourteenth Amendment and Alabama state law in connection with the termination of Plaintiff's employment. (Doc.[1] 10 ("Amended Complaint" or "Amd. Compl.")). The action is assigned to the

---

1. The court agrees with the magistrate's conclusion that, even if Hannah terminated the plaintiff's employment because of "rumors" that the plaintiff intended to run to replace Hannah, that does not create a First Amendment claim under section 1983. See doc. 19 at 16. The Eleventh Circuit has been clear that a threshold requirement for any First Amendment claim is "the employee's speech." *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 760 (11th Cir.2006). An allegation of "rumors" is not the same as an allegation that the *plaintiff* engaged in speech.

1. Citations herein to "Doc(s). ——" are to the document numbers assigned by the clerk to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet. Unless otherwise stated, pinpoint citations are to the page of the electronically filed document, which may not correspond to the pagination on the original "hard copy."

undersigned United States Magistrate Judge pursuant to the General Order of Reference dated January 14, 2013. The cause comes to be heard for a report and recommendation, *see* 28 U.S.C. § 636(b), FED.R.CIV.P.; Rule 72(b); LR 72.1(b), on Hannah's motion to dismiss all claims for money damages for lack of subject-matter jurisdiction under FED.R.CIV.P. 12(b)(1) and to dismiss all other causes of action for failure to state a claim under FED.R.CIV.P. 12(b)(6). (Doc. 12). Also included in Hannah's filing is a motion to strike certain allegations of Plaintiff's pleading under FED.R.CIV.P. 12(f), as well as a demand for attorney's fees under 42 U.S.C. § 1988. Upon consideration, it will be recommended that Hannah's motion to strike be denied, his motion to dismiss be granted, and that his demand for attorney's fees be denied.

## I. BACKGROUND

Plaintiff, an African–American male, was employed for over thirteen years as a deputy sheriff in the Bibb County Sheriff's Department. (Amd. Compl. ¶ 8). At all times relevant, Hannah, who is white, was the Bibb County Sheriff. (*Id.* ¶ 5). On September 27, 2013, Plaintiff received a letter from Hannah advising that Plaintiff was suspended with pay "pending the reports of a special inquiry" by the Bibb County Grand Jury into unspecified activities of Plaintiff. (*Id.* ¶ 9; Doc. 10–1 at 2).

According to Plaintiff, Hannah thereafter "leaked false information and . . . unfounded allegations to the press," thereby "subjecting plaintiff to non-verified accusations, slanderous statements, and information." (Amd. Compl. ¶ 12). More specifically, Plaintiff alleges that Hannah "leaked" information to the local Fox television station to the effect that Plaintiff was involved in "inappropriate behavior" while on patrol duties. (*Id.* ¶ 9). Likewise, Hannah was quoted in a newspaper article published in the Centreville Press on October 8, 2013, which stated Plaintiff was the subject of complaints for "exhibiting inappropriate behavior during traffic stops." (*Id.* ¶ 12).

On October 11, 2013, Plaintiff received a letter from Hannah notifying Plaintiff that his employment was terminated, effective immediately. (*Id.* ¶ 13; Doc. 10–1 at 4). The letter advised that such termination was based on "multiple violations" of Plaintiff's oath as a deputy; the law enforcement code of ethics; and certain "rules, regulations, and standard operating procedures, including but not limited to" the following:

Failure to fulfill the duties of your office, including neglecting and failing to complete reports and turn over property, as required;

Engaging in outside employment while on the job;

Misuse of equipment;

Misuse of your position for personal gratification; and

Conduct unbecoming an officer.

(Doc. 10–1 at 4).

On October 30, 2013, Plaintiff filed this action, naming as defendants both Hannah, only in his official capacity, and the Bibb County Commission ("Commission") (collectively "Defendants"). (Doc. 1 ("Complaint" or "Compl.")). Alleging that Hannah and the Commission were his joint employers (Compl. ¶ 8), Plaintiff raised various claims against both of them in four separate counts. In Count One, Plaintiff brought claims pursuant to § 1983, alleging that in terminating his employment, Defendants violated his substantive and procedural due process rights under the United States Constitution. (Compl., Count One, ¶¶ 21–22). He also raised a parallel state law due process claim based

on Article I, § 13 of the Alabama Constitution. (*Id.*) Further, although not specifically mentioned in any count, Plaintiff also incorporated by reference earlier allegations in the Complaint that are associated with other federal constitutional rights. In particular, Plaintiff also referenced the Equal Protection Clause of the Fourteenth Amendment (*id.* ¶ 15) and, although he did not specifically assert that it played a role in his termination, he alleged generally that "Hannah operates the Sheriff's office with systematic racial discrimination," whereby "African–American employees are subject to routine ridicule, . . . racially hostile comments," and receive less favorable work assignments and disciplinary treatment than white employees. (*Id.* ¶ 10). Plaintiff further claimed that he "was terminated for an illegal reason" (*id.* ¶ 19) that was "personal in nature," specifically, because of "improper rumors" that the Plaintiff would be running as a candidate for office to replace Hannah as Sheriff. (*Id.* ¶ 22).

In the remaining three counts, Plaintiff raised claims under Alabama law. In Count Two, generically captioned, "Violations of State Law," Plaintiff claimed that the Defendants violated his statutory rights by failing to follow merit system procedures for Bibb County employees set forth in Ala.Code § 45–4–120. (Compl. ¶ 23). Count Three, styled as a claim for breach of contract, asserted that the defendants were also liable under Alabama law because they failed to adhere to the terms of the Bibb County Personnel Polices and Procedures, adopted by the Commission on April 26, 1994 (hereinafter the "County Personnel Policies"), which Plaintiff asserted had given rise to an employment contract. (Compl. ¶ 24; *see also id.* ¶ 17). Finally, in Count Four, Plaintiff maintained that Defendants were guilty of "wrongful termination" under Alabama law because they fired him without following "rules and regulations" that allegedly afforded Plaintiff with due process rights, including the right notice of the reasons for proposed disciplinary action and a pre-termination hearing. (*Id.* ¶ 25). On his claims, Plaintiff sought relief that included reinstatement, back pay, restored seniority, and compensatory and punitive damages. (Compl. at pp. 9–10).

The Commission and Hannah filed respective motions to dismiss all claims. (*See* Docs. 6, 7, 8). In support of its motion, the Commission argued that all of the claims against it were due to be dismissed on the ground that Plaintiff was employed as a matter of law by the Sheriff, not the Commission or Bibb County. (Doc. 7 at 4–5). As a result, the Commission emphasized, Plaintiff could not rely on ALA. CODE § 45–4–120, which applies only to Bibb County employees. (*Id.*) The Commission also claimed that Plaintiff had no property interest in his continued employment as required to show a due process violation arising from his termination. (*Id.* at 6–8; *see also id.* 9–11). In particular, the Commission argued that the County Personnel Policies, upon which Plaintiff relied in Count Three, did not give rise to a contract of employment. (*Id.* at 10–11; *see also* Doc. 7–1). For his part, Hannah's motion incorporated the Commission's arguments by reference, and he further moved for dismissal on the ground that he was immune from liability because he is a state official sued only in his official capacity. (Doc. 8).

While those motions to dismiss were pending, on December 11, 2013, a Bibb County Grand Jury had handed down a 20–count indictment against Plaintiff, based principally upon allegations that he had used his position to threaten, harass, and unlawfully restrain eight identified women in efforts to coerce them, at times successfully, into providing sexual favors.

(Amd. Compl. ¶ 19; Doc. 10–1 at 6–9). Specifically, Plaintiff is charged in the indictment with the following offenses under Alabama law: sexual conduct with a person in custody of the sheriff's department, in violation of ALA. CODE § 14–11–31; sodomy, first degree, see id. § 13A6–63(a)(1); three counts of sexual abuse, first degree, see id. § 13A–6–66(a)(1); human trafficking in both the first degree, see id. § 13A–6–152, and second degree, see id. § 13A–6–153; intimidating a witness, see id. § 13A–10–123; three counts of harassment, see id. § 13A–11–8(a); two counts of making harassing communications, see id. § 13A–11–8(b); two counts of unlawful imprisonment, see id. § 13A–6–42, possession of a controlled substance, see id. § 13A–12–212; possession of drug paraphernalia, see id. § 13A–12–260; theft in the first degree, see id. § 13A–8–3; and two counts of using his official position for personal gain, in violation of ALA.CODE § 36–25–5. (Doc. 10–1 at 6–9).

Two days later, on December 13, 2013, Plaintiff filed an Amended Complaint which names Hannah, still sued only in his official capacity, as the sole defendant, dropping all claims against the Commission. Addressing his recent indictment, Plaintiff asserts that Hannah had "participated in an unlawful and revengeful criminal investigation" in which he "persuaded witnesses and wrongfully and unlawfully used the powers of his office to gather and misallocate evidence against the plaintiff after this suit was filed." (Amd. Compl. ¶ 19). Plaintiff further contends that Hannah "has misrepresented evidentiary findings to the Grand Jury" and "filed miniscule, unfounded, and insignificant evidence ... in attempts to mislead, misguide, and manipulate his wrongful intentions of preventing the progression of this suit and to criminally convict the plaintiff." (Id.)

With regard to causes of action being pursued against Hannah, the Amended Complaint omits the allegations contained in Count Two and County Three of the original Complaint in their entirety, as well as all references to ALA.CODE § 45–4–120 and the Bibb County Personnel Policies and Procedures. Plaintiff reasserts, however, his allegations from his original Count One, alleging substantive and procedural due process violations under the Fourteenth Amendment and the Alabama Constitution (Amd. Compl. ¶¶ 20–21). Plaintiff also still invokes the Equal Protection Clause (id. ¶ 15) and asserts that he was "terminated for an illegal reason." (Id. ¶ 17). In particular, Plaintiff claims that the "real reason" for his discharge was either "improper rumors of the plaintiff seeking the office of Sheriff of Bibb County, or ... the Sheriff's racist disposition or unfavorable views towards African American employees in his department." (Id. ¶ 21). Finally, the Amended Complaint also reasserts Plaintiff's state-law claim for "wrongful termination" contained in Count Four of his original pleading, which is still referred to as such despite the fact that there is no longer a "Count Two" or "Count Three." (Id. ¶ 22).

The court deemed Plaintiff's Amended Complaint to moot the defendants' then pending motions to dismiss directed at the original pleading. (Doc. 11). Hannah responded by filing his instant motion to dismiss. (Doc. 12). Plaintiff subsequently filed a motion to stay these proceedings pending resolution of his criminal charges, on the ground that he might be compelled to give testimony in this action that might incriminate him in the criminal case, in violation of the Fifth Amendment. (Doc. 16). The court denied that motion. (Doc. 17). Although the court thereafter granted Plaintiff's motion for leave to file materials in opposition to Hannah's instant motion to dismiss (see Doc. 18 & unnumbered

Text Order dated 5/30/2014), Plaintiff never filed such materials.

## II. Motion to Dismiss Damages Claims for Lack of Jurisdiction

 Hannah first argues that, because he has been sued only in his official capacity, all claims for money damages and backpay are due to be dismissed under FED.R.CIV.P. 12(b)(1) for want of jurisdiction. As it relates to the management of his employees, a county sheriff in Alabama acts as an arm of the state, and the claims asserted against Hannah in his official capacity are deemed to be against the entity he represents, *i.e.,* the State of Alabama, rather than against him individually. *See Welch v. Laney,* 57 F.3d 1004, 1008–09 (11th Cir.1995). The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, unless that state either consents to be sued or waives its immunity from such suit. *Free v. Granger,* 887 F.2d 1552, 1557 (11th Cir.1989) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)); *see also Manders v. Lee,* 338 F.3d 1304, 1308–09 (11th Cir.2003) (en banc). As a result, to the extent that Hannah is sued in his official capacity for an award of damages or backpay, he is immune from liability under § 1983 and state law, so this court lacks jurisdiction to hear such claims. *See Welch, supra; Tani v. Shelby County, Ala.,* 511 Fed.Appx. 854, 857 (11th Cir. 2013); *United Carolina Bank v. Board of Regents of Stephen F. Austin State Univ.,* 665 F.2d 553, 561 (5th Cir.1982).

## III. Motion to Dismiss for Failure to State a Claim

### A. Rule 12(b)(6) Review Standards

Hannah argues that he is also entitled to a dismissal under FED.R.CIV.P. 12(b)(6) as it relates to Plaintiff's claims for prospective injunctive relief, including reinstatement. Rule 12(b)(6) authorizes a motion to dismiss a complaint on the ground that its allegations fail to state a claim upon which relief can be granted. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group, LLC,* 551 F.3d 1223, 1224 (11th Cir.2008) (per curiam). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that the plaintiff can prove facts it has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly,* 550 U.S. at 563 n. 8, 127 S.Ct. 1955 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Id.,* 550 U.S. at 555, 127 S.Ct. 1955 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.,* its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citations omitted).

### B. Federal Claims Brought Pursuant to 42 U.S.C. § 1983

#### 1. Due Process

■ In Count One of the Amended Complaint, Plaintiff seeks relief against Hannah under 42 U.S.C. § 1983 based on allegations that the termination of his employment violated his rights under the Due Process Clause of the Fourteenth Amendment[2] to the United States Constitution. (Amd. Compl. ¶¶ 20–21). That provision decrees that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Section 1983 provides a vehicle by which a plaintiff may seek redress against a person who, while acting under color of state law, has caused a violation of his federal constitutional rights. The Eleventh Amendment does not bar § 1983 claims against state officials to the extent that the plaintiff seeks prospective injunctive relief. *Welch, supra.* Nonetheless, Hannah moves for dismissal of Plaintiff's § 1983 claims to the extent they seek such relief, including reinstatement, on the ground that Plaintiff's allegations do not plausibly establish a due process violation arising out of the termination of his employment. The undersigned agrees.

■ Plaintiff claims that his termination violated both substantive and procedural due process under the Fourteenth Amendment. (Amd. Compl. ¶ 21). However, the right to continued public employment is not a fundamental right protected by substantive due process. *McKinney v. Pate,* 20 F.3d 1550, 1556–57 (11th Cir.1994) (en banc). Accordingly, Plaintiff's substantive due process claim under § 1983 is due to be dismissed.

■ Turning to Plaintiff's procedural due process claim related to his discharge, such requires a showing that he had a protected property interest in his continued employment. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Supreme Court has explained:

'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' [*Roth,* 408 U.S. at 577, 92 S.Ct. 2701]. Such entitlements are, " 'of course, ... not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Paul v. Davis,* 424 U.S. 693, 709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (quoting *Roth, supra,* at 577, 92 S.Ct. 2701); *see also Phillips v. Washington Legal*

---

**2.** Plaintiff actually invokes the due process protections of both the Fifth Amendment and the Fourteenth Amendment. (Amd. Compl. ¶¶ 1, 15, 20). However, the Fifth Amendment's Due Process Clause applies only to the federal government, while that of the Four-

teenth Amendment applies to the States. *See Dusenbery v. United States,* 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002). Thus, only the Due Process Clause of the Fourteenth Amendment is involved in this case.

*Foundation,* 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998).

*Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). In practice, this means that the plaintiff must point to some state statute, regulation, ordinance, express or implied contract, or some other mutually explicit understanding that establishes that the claimed benefit cannot be withdrawn except for "cause." *See Barnes v. Zaccari,* 669 F.3d 1295, 1303 (11th Cir. 2012); *see also Ross v. Clayton County, Ga.,* 173 F.3d 1305, 1307 (11th Cir.1999) ("Generally, a public employee has a property interest in continued employment if state law or local ordinance in any way limits the power of the appointing body to dismiss an employee." (internal quotation marks omitted)); *Nicholson v. Gant,* 816 F.2d 591, 597 (11th Cir.1987). Hannah argues, however, that Plaintiff has not sufficiently pled facts supporting that he had a property interest in his continued employment. The undersigned agrees.

■■ In Alabama, employment, including as it relates to that of deputy sheriffs, is generally at will and thus terminable by either party with or without cause. *Harper v. Winston County,* 892 So.2d 346, 351 (Ala.2004); *Mack v. Arnold,* 929 So.2d 480, 483–84 (Ala.Civ.App.2005). No property interest attaches in such an arrangement. *Brett v. Jefferson County, Ga.,* 123 F.3d 1429, 1434 (11th Cir.1997); *Stough v. Gallagher,* 967 F.2d 1523, 1530 (11th Cir. 1992). Nonetheless, in his original Complaint, Plaintiff asserted that he enjoyed "property rights created by state law" (Compl. ¶ 22) that vested him with due process rights to notice and a pre-termination hearing, based on what amounts to three theories. First, Plaintiff claimed that he was subject to the protections of ALA.CODE § 45–4–120 (*see* Compl. ¶¶ 16–17, 23), which establishes a personnel system

for Bibb County employees. Second, Plaintiff claimed that he had contract for definite employment based upon the County Personnel Policies. (*Id.* ¶ 24). And third, Plaintiff referenced otherwise unspecified "rules and regulations" promulgated by "Defendants" that allegedly "provided plaintiff with certain due process rights." (*Id.* ¶ 25).

■ As to the first two theories, it might be assumed that if Plaintiff could show that he was a Bibb County employee subject to the personnel system established by § 45–4–120 or the County Personnel Policies, such could confer a legitimate expectation of continued employment giving rise to a property interest. *See Brown v. Georgia Dep't of Rev.,* 881 F.2d 1018, 1028 (11th Cir.1989); *Lassiter v. Covington,* 861 F.2d 680, 683–84 (11th Cir. 1988); *Haddler v. Walker County, Ala.,* 2014 WL 2465322, at *4 n. 3 (N.D.Ala. May 30, 2014); *Key v. Morgan County Sheriff's Office,* 2012 WL 1340099, *7 (N.D.Ala. Apr. 12, 2012). However, under Alabama law, county sheriffs are state constitutional officers, such that the deputies they appoint are also deemed to be state officials, rather than employees of the counties in which they serve. *Mack,* 929 So.2d at 483; *Whitten v. Lowe,* 677 So.2d 778, 779–80 (Ala.Civ.App.1995); *see also Lockridge v. Etowah County Com'n,* 460 So.2d 1361, 1363 (Ala.Civ.App.1984) (recognizing that only the sheriff, not the county commission, was authorized to promulgate work rules or grant leaves of absence for deputy sheriffs); *Terry v. Cook,* 866 F.2d 373, 379 (11th Cir.1989) ("We can find no authority in Alabama law granting the county commission the authority to hire and fire deputy sheriffs...."). As a result, a deputy sheriff is not generally subject to a merit system covering county employees, *see Whitten, supra* (holding that sheriff's deputies were not "employed in the service of

Marshall County" and that the county personnel board therefore had no jurisdiction to review their respective terminations ordered by the sheriff); *see also Hooks v. Hitt*, 539 So.2d 157, 159 (Ala.1988) (holding that investigator employed by the Etowah County District Attorney was a state employee not covered by a county merit system), nor to a personnel policies manual covering county employees. *See Mack*, 929 So.2d at 483. On its face, the personnel system established by § 45–4–120 applies only to "individual[s] who work[ ] for the county," ALA.CODE § 45–4–120(b)(6), and there is no mention in the statute of deputy sheriffs.[3] *Compare, e.g.*, Ala. Const. Blount County § 5.01, Ala. Const. Amend. No. 775; ALA.CODE § 45–5–120. And because Plaintiff is deemed to work for the state, rather than the county, he is not automatically covered by either the statutory personnel system for county employees or by the County Personnel Policies. *Whitten; Mack, supra.* Further, the Alabama Court of Civil Appeals has held that, as an alter ego of the sheriff, a deputy is also exempt from coverage under the merit system for Alabama State employees. *Blount County Com'n v. Sherrell*, 77 So.3d 1196, 1201 (Ala.Civ.App. 2010), *writ quashed*, 77 So.3d 1202 (Ala. 2011).

Notwithstanding, it might be further assumed that an employment contract giving rise to a property interest could still exist despite Plaintiff's status as a state employee if he could establish the following: (1) that Sheriff Hannah communicated to Plaintiff, by issuance of the County Personnel Policies or otherwise, that Hannah intended to abide by the termination procedures in the County Personnel Policies; (2) that the language of the County Personnel Policies was specific enough to constitute an offer promising not to discharge employees except under the conditions enumerated therein; and (3) that Plaintiff accepted that offer by continuing to work for Hannah after becoming aware of the offer. *See Mack*, 929 So.2d at 484; *see also Hoffman–LaRoche, Inc. v. Campbell*, 512 So.2d 725, 735 (Ala.1987). However, the Amended Complaint does not allege sufficient factual matter under *Iqbal* and *Twombly* to support that Hannah distributed to Plaintiff, or otherwise manifested an intent to be bound by, the County Personnel Policies. *See Chappelle v. City of Leeds*, 2013 WL 1278964, at *7 (N.D.Ala. Mar. 25, 2013); *Maledy v. City of Enterprise*, 2012 WL 1028176, at *4 (M.D.Ala. Mar. 26, 2012). Nor has Plaintiff alleged that the language of the County Personnel Policies is specific enough to give rise to a binding contract for definite employment. *See Foster v. Select Medical Corp.*, 2012 WL 1415499, at *7–8 (M.D.Fla. Apr. 24, 2012); *Maledy, supra.* In fact, when the Commission moved to dismiss the original Complaint, it included a copy of excerpts from the Forward of the Coun-

---

**3.** To be sure, deputy sheriffs in some Alabama counties have expressly been made subject to civil service merit systems by amendments to the Alabama Constitution and legislation enacted pursuant thereto. *See* Ala. Const. Baldwin County § 9, Ala. Const. Amend. No. 717; Ala.Code §§ 45–2–234.1 to 45–2–234.15; Ala. Const. Blount County § 5.01, Ala. Const. Amend. No. 775; Ala.Code § 45–5–120; Ala. Const. Chilton County § 4, Ala. Const. Amend. No. 722; Ala.Code §§ 45–11–231.01 to 45–11–231.13; Ala. Const. Madison County § 12, Ala. Const. Amend. No. 694; Ala. Const. Marshall County § 5, Ala. Const. Amend. No. 647; Ala. Const. Mobile County § 26.01, Ala. Const. Amend. No. 791; Ala. Const. Walker County § 6, Ala. Const. Amend. No. 655; *see also Fowler v. Johnson*, 961 So.2d 122, 131–32 (Ala.2006); *Haddler*, 2014 WL 2465322, at *4 n. 3. However, there does not appear to be any Alabama constitutional or statutory provision rendering deputy sheriffs in Bibb County subject to a civil service scheme.

ty Personnel Policies, which states in relevant part as follows:

All county policies and procedures, whether explicit or implied, as contained in this personnel system are intended to be guidelines and not a contract between the county and its employees and should not be viewed as such. They are established to assist elected officials and supervisors in making day-to-day employee decisions.

\* \* \*

The commission reserves the right to make changes in any personnel policy, rule, procedure, and/or employee benefit at any time when it is deemed necessary or desirable.

(Doc. 7–1 at 2–3). Such a disclaimer, which the court might consider without converting the motion to one for summary judgment, *see Butler v. Cleburne County Com'n,* 2012 WL 2357740, at \*20–21 (N.D.Ala. Jan. 17, 2012), belies the notion that the County Personnel Policies might give rise to an employment contract. *See id.; Mack,* 929 So.2d at 484.

On top of that, while Plaintiff's original pleading attempted to establish his alleged right to continued employment by express reliance upon ALA. CODE § 45–4–120 and the County Personnel Policies, his Amended Complaint glaringly does not mention either one. The clear implication is that Plaintiff is no longer relying on them as it relates to the existence of a property interest or any other issue. Even if Plaintiff were still purporting doing so, such would be to no avail for reasons stated above. But having eviscerated the only identified

sources of alleged legal rights as it relates to his continued employment, Plaintiff's pleading now makes only generic references to "statutory ... rights" (Amd. Compl. ¶¶ 1, 14, 16), and otherwise unspecified "rules and regulations." (*Id.* ¶ 21). Such allegations are too vague and indefinite to plausibly show that Plaintiff had a property interest in his job. *See Donnell v. Lee County Port Auth.,* 509 Fed.Appx. 903, 905 (11th Cir.2013); *Noles v. Wakulla County Bd. of County Com'rs,* 2012 WL 3230499, at \*3–4 (N.D.Fla. May 31, 2012); *Maledy, supra; also cf. Lindbloom v. Steube,* 440 Fed.Appx. 757, 758 (11th Cir. 2011) (district court properly dismissed claims against sheriff based on allegations that deputies' actions were done pursuant to "policies and procedures" promulgated by the sheriff, where such "policies and procedures" were not otherwise described or identified). As a consequence, Plaintiff's § 1983 procedural due process claim is due to be dismissed.

### 2. First Amendment

 Plaintiff also claims that he "was terminated for an illegal reason." (Amd. Compl. ¶ 17). In one theory, Plaintiff claims in Count One that the "real reason" for his termination was "improper rumors of the plaintiff seeking the office of the Sheriff of Bibb County." (Amd. Compl. ¶ 21). Such allegations might be construed as attempting to state a § 1983 claim based upon the First Amendment.[4] Under that provision, "government officials may not discharge public employees for refusing to support a political party or

---

4. Plaintiff does not mention the First Amendment in his pleading. However, to survive a Rule 12(b)(6) motion to dismiss, a complaint need not necessarily cite the particular statute or otherwise identify the legal theory under which a plaintiff intends to travel; a plaintiff is generally allowed to pursue recovery based on factual allegations that are sufficient to

state a claim under any viable legal theory. *See Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 964 n. 2 (11th Cir.1997); *St. Joseph's Hosp., Inc. v. Hospital Corp. of Amer.,* 795 F.2d 948, 954 (11th Cir.1986); *see also, e.g., Rehberg v. Paulk,* 611 F.3d 828, 851 n. 26 (11th Cir.2010).

its candidates, unless political affiliation is a reasonably appropriate requirement for the job in question." *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 714, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996). Further, the Eleventh Circuit has held that "although being a candidate is not the same as supporting a candidate, the two acts are closely related," *Randall v. Scott*, 610 F.3d·701, 711 (11th Cir.2010), such that the "decision to run for office enjoys *some* First Amendment protection." *Id.* at 714 (emphasis original). In that context, courts employ a balancing test between the discharged employee's First Amendment right to run for office and the state's interest in office loyalty. *Underwood v. Harkins*, 698 F.3d 1335, 1340 (11th Cir.2012).

▮ Plaintiff does not allege that he had announced that he would run to replace Hannah as Sheriff, nor even that Plaintiff actually intended to run for any elected office. Rather, Plaintiff claims merely that Hannah terminated his employment because of "rumors" that Plaintiff intended to run to replace Hannah. It is doubtful that an allegation that Hannah merely perceived incorrectly that Plaintiff intended to run for his office supports that Plaintiff engaged in activity protected by the First Amendment. *See Bradford v. City of Roswell*, 2014 WL 3767794, at *4 (N.D.Ga. July 31, 2014); *Blickley v. Ford*, 2009 WL 856638, at *2 (M.D.Fla. Mar. 30, 2009). But even assuming that the discharge of a public employee motivated by an elected superior's mistaken belief that his subordinate intended to run against him could violate the First Amendment, it would not do so here.

▮ The Eleventh Circuit has held in that the "closeness and cooperation re-

quired between sheriffs [in Alabama] and their deputies necessitates the sheriff's absolute authority over their authority and retention" such that sheriffs may discharge them without violating the First Amendment based on their support of another candidate for sheriff. *Terry*, 866 F.2d at 377. More recently, the Eleventh Circuit has also recognized that "an elected official may dismiss an immediate subordinate for opposing her in an election without violating the First Amendment if the subordinate, under state or local law, has the same duties and powers as the elected official." *Underwood*, 698 F.3d at 1343. The relationship between Alabama sheriffs and their deputies fits that description. *See Terry*, 866 F.2d at 377; *see also Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1526 (11th Cir.1990). Based on *Terry* and *Underwood*, any First Amendment claim lurking within Count One, to the effect that Hannah fired Plaintiff because of a suspicion, regardless of its correctness or foundation, that Plaintiff intended to run as a candidate to replace Hannah as Sheriff, is due to be dismissed.

### 3. Equal Protection

▮ Alternatively, Plaintiff alleges that the "real reason" for his termination is "the Sheriff's racist disposition and unfavorable views towards African American employees in his department." (*Id.* ¶ 21). Plaintiff has also cited the Equal Protection Clause of the Fourteenth Amendment[5] (*id.* ¶ 15), which provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. That provision, of course, prohibits public employers from intentionally discriminating because of race. *See·generally Washing-*

---

**5.** The Equal Protection Clause provides that no State shall "deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

*ton v. Davis,* 426 U.S. 229, 239–48, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

■ "Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas*[6] prima facie case, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), it must provide 'enough factual matter (taken as true) to suggest' intentional race discrimination." *Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir.2008) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955) (footnote added). The Supreme Court has further explained:

> Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' FED.R.CIV.P. 8(a)(2).

*Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (citation omitted). Thus, even if well-pled allegations are "consistent" with a defendant having subjected a plaintiff to adverse treatment for an unlawful reason, a complaint nonetheless is subject to dismissal for failure to state a claim where a discriminatory motive "is not a plausible conclusion" given an "obvious alternative explanation" that would render the defen-

dant's objective conduct lawful. *Iqbal,* 556 U.S. at 681–82, 129 S.Ct. 1937; *see also Twombly,* 550 U.S. at 567, 127 S.Ct. 1955. In such circumstances, a plaintiff must "allege more by way of factual content to 'nudge' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Id.,* 556 U.S. at 683, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

■ Plaintiff asserts that Hannah discharged him based upon "the Sheriff's racist disposition and unfavorable views towards African American employees in his department." While such a conclusory allegation can provide the "framework" of an equal protection claim, it is not entitled to "the presumption of truth" in connection with a Rule 12(b)(6) motion. *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937; *see also id.* at 680–81, 129 S.Ct. 1937; *Edwards v. Prime, Inc.,* 602 F.3d 1276, 1300–01 (11th Cir. 2010); *Davis,* 516 F.3d at 974. Rather, the only facts potentially supporting an inference that Plaintiff's discharge was because of race are (1) that Plaintiff is African American while Hannah is white, which, although not expressly pled, the undersigned has gleaned from the pleading; and (2) that Hannah allegedly "operates the Sheriff's office with systematic racial discrimination" whereby "African American employees are subject to routine ridicule, ... racially hostile comments," less favorable work assignments, and more severe discipline than their white counterparts.[7] (Amd. Compl. ¶ 10). However,

---

**6.** *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**7.** Included within Hannah's motion to dismiss is a motion to strike portions of the Amended Complaint pursuant to FED.R.CIV.P. 12(f). (Doc. 12, ¶¶ 8–9). In particular, that motion to strike is directed at Plaintiff's allegations that Hannah operated the Sheriff's Department with "systematic racial discrimination" (Amend. Compl. ¶ 10), that Plaintiff's termi-

nation was politically motivated (*see id.* ¶¶ 19, 21), and that Hannah "participated in an unlawful and revengeful criminal investigation" of Plaintiff (*see id.* ¶¶ 12, 19, 21). (*See* Doc. 12, ¶¶ 8–9). Hannah argues that such allegations are due to be stricken as "immaterial and scandalous" because they do not relate to Plaintiff's claims alleging that he was denied procedural due process in connection with his termination. (Doc. 12, ¶ 8). The motion to strike is due to be denied, however, because

that Plaintiff and Hannah are of different races itself means little. *See Edwards,* 602 F.3d at 1301; *Allah El v. Avesta Homes, LLC,* 520 Fed.Appx. 806, 808 (11th Cir.2013). Likewise, the Amended Complaint's allegations of "systematic racial discrimination" in the Sheriff's Office are entirely generic, failing to describe the substance of any allegedly racist statements or employment decisions, who allegedly made them, or when. Plaintiff also makes no further effort to link any such discriminatory conduct occurring generally to Hannah's decision to terminate Plaintiff's employment. In particular, Plaintiff does not allege, even generally, that a white employee who was similarly situated to him was not terminated. *See Uppal v. Hospital Corp. of Amer.,* 482 Fed.Appx. 394, 396 (11th Cir.2012).

In addition, the Amended Complaint itself supplies more than ample reason to think that Plaintiff's termination was motivated by reasons that were not race-based and were lawful. First, Plaintiff has expressly claimed that his discharge was politically motivated, precipitated by "rumors" that Plaintiff intended to run to replace Hannah as sheriff. For reasons previously explained, however, if Hannah fired Plaintiff on such ground, it would not have violated the Constitution. Second, the Amended Complaint and the materials attached thereto also suggest that Hannah fired Plaintiff based upon an investigation revealing that he had been accused by multiple, identified women of making threats designed to coerce them into supplying sexual favors to avoid arrest or to receive more favorable treatment while in custody. If true, that would obviously constitute an extremely serious, flagrant abuse of Plaintiff's office. Plaintiff variously characterizes such accusations as "false," "unfounded," and "non-verified." (*See* Amd. Compl. ¶¶ 12–13). Strictly speaking, however, the issue here is not whether Plaintiff is actually guilty of the misconduct Hannah cited in his letter to Plaintiff advising of his termination, because an "employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999). Plaintiff makes vague assertions that Hannah "participated in an … investigation" into the accusations, during which he "persuaded witnesses" by unspecified means to testify against Plaintiff, "misallocate[d] evidence against the plaintiff," and "filed minuscule, unfounded, and insignificant evidence to the Grand Jury." (*Id.* ¶ 19). Nowhere, however, does Plaintiff allege any factual matter tending to support either that complaints were not actually made against him by female detainees, that Hannah was acting out of a racial animus in taking such steps to investigate such complaints, or that Hannah actually knew or believed such complaints to be groundless at the time he terminated Plaintiff's employment. Ultimately, it is not enough to make general allegations of racism within the Sheriff's Office and to make a broad assertion that such an animus led Hannah to hatch a scheme, involving multiple witnesses and the county district attorneys office, for the purpose of framing an at-will employee who was a 13–year veteran of Hannah's office. Plaintiff

---

the allegations in question bear upon Plaintiff's claims that he was "terminated for an illegal reason" (Amd. Compl. ¶ 17), including because of "rumors" that he intended to run for Sheriff against Hannah and because of race. (*Id.* ¶ 21), and Hannah has not shown that the allegations would cause him unfair prejudice. *See Augustus v. Board of Public Instruction of Escambia County, Fla.,* 306 F.2d 862, 868 (5th Cir.1962); *Tolar v. Bradley Arant Boult Cummings,* 2014 WL 3974671, at *5–7 (N.D.Ala. Aug. 11, 2014).

has failed to plead sufficient factual matter under *Iqbal* to render plausible his claim that he was terminated because of race. Accordingly, his equal protection claim is due to be dismissed pursuant to Rule 12(b)(6).

## C. State–Law Claim for "Wrongful Termination"

 In Count Four of the Amended Complaint, which is actually only the second "Count" of that pleading, Plaintiff maintains that Hannah is liable under Alabama law for "wrongful termination." (Amd. Compl. ¶ 22). Plaintiff characterizes this claim as a tort, based on Hannah's failure to afford him with notice and a pre-termination hearing, as allegedly required by unspecified "rules and regulations which provided [him] with due process rights...." (*Id.*) Hannah has moved to dismiss this claim on the ground that the lack of allegations supporting that Plaintiff had any legal entitlement to continued employment means that he also cannot state a claim for wrongful termination under Alabama law. The undersigned agrees. The firing of an at-will employee generally will not support a claim of wrongful discharge under Alabama law. *See Mack,* 929 So.2d at 483–85; *Cunningham v. Dabbs,* 703 So.2d 979, 981 (Ala.Civ.App. 1997). And Plaintiff's failure to allege facts showing that he had an employment contract or any other basis for a legitimate expectation of continued employment as required to establish a federal due process claim under § 1983 also calls for the dismissal of any parallel due process claim arising state law. *See Jefferson County v. Braswell,* 407 So.2d 115, 122 (Ala.1981) ("We consider our analysis of the ... due process issues under the United States Constitution equally applicable to those same issues under the Alabama Constitution."); *Alabama State Personnel Bd. v. Garner,* 4 So.3d 545, 550 n. 2 (Ala.Civ.App.

2008) (recognizing that the due process guaranteed under the Alabama Constitution is "coextensive" with the due process guaranteed under the United States Constitution).

## IV. Demand for Attorney's Fees

 Hannah's motion to dismiss also includes a demand for attorney's fees under 42 U.S.C. § 1988. (Doc. 12, ¶ 10). Under the "American Rule," each party is generally required to bear his own litigation expenses, including attorney's fees, regardless of whether he wins or loses. *Fox v. Vice,* 563 U.S. ——, ——, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45 (2011); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, Congress has authorized the award of "a reasonable attorney's fee" to "the prevailing party" in various kinds of civil rights cases, including suits brought under § 1983. 42 U.S.C. § 1988(b). The Supreme Court has recognized that when the plaintiff in such an action is the prevailing party, he "should ordinarily recover an attorney's fee" from the defendant—the party whose misconduct created the need for legal action. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (internal quotation marks omitted). Section 1988(b) also authorizes a fee award to a prevailing defendant, but only upon a finding by the court that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.,* 434 U.S. at 421, 98 S.Ct. 694; *see also Fox,* 131 S.Ct. at 2213; *Hughes v. Rowe,* 449 U.S. 5, 14–15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). "Factors that are important in determining whether a claim is frivolous include (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) wheth-

er the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Quintana v. Jenne,* 414 F.3d 1306, 1309 (11th Cir.2005) (quotation omitted). However, courts must be cautious not to judge in hindsight whether a claim was frivolous when it was filed. *See Christiansburg Garment Co.,* 434 U.S. at 421–22, 98 S.Ct. 694; *Sullivan v. School Bd. of Pinellas County,* 773 F.2d 1182, 1188–89 (11th Cir.1985). Within these constraints, the decision whether to award attorney's fees to a prevailing party under § 1988 is discretionary with the court.

■ Hannah argues that he is entitled to attorney's fees "given the well-established nature of the law" he cites in support of dismissal. (Doc. 12, ¶ 10). In support, he relies upon *Head v. Medford,* 62 F.3d 351 (11th Cir.1995), wherein the Eleventh Circuit held that a district court erred in denying attorney's fees under § 1988 to a defendant public employer where "long and firmly settled" Georgia law dictated that the plaintiff was an at-will employee and thus had no cognizable federal constitutional due process based upon her discharge. *Id.* at 356. As such, the *Head* court ruled that the plaintiff's "assertion of a constitutional claim based knowingly on a nonexistent property interest was legally groundless" such that her "federal due process claims were legally frivolous as a matter of law," entitling the defendant to an award of attorney's fees unless the district court were to point out "special circumstances" justifying their denial. *Id.*

*Head* is distinguishable, however, because, given the state of Alabama law, it is less clearly established that Plaintiff had no due process property interest in his continued employment. There is no doubt that employment in Alabama is *generally* at will. It is also true that deputies in Alabama are deemed to be State employ-

ees under the control of the sheriff, rather than county employees. Despite that, "Alabama law recognizes that not all sheriff's deputies are purely 'at will' employees and that in some cases they may be entitled to [due process protections]." *Haddler,* 2014 WL 2465322, at *4 n. 3. As further detailed in the discussion of Plaintiff's § 1983 due process claims, whether an Alabama deputy sheriff has a property interest in his job appears to vary from county to county. That is, the Alabama Court of Civil Appeals has held that deputies are not covered by the state employee merit system, *Sherrell, supra,* and that court has further indicated that deputies are also not generally covered by merit systems for county employees. *See Whitten; Mack, supra.* However, the Alabama legislature has enacted laws that establish local civil service schemes that either apply specifically to designated personnel of sheriff's office in a particular county, *see, e.g.,* ALA.CODE § 45–11–231 et seq.; § 45–2–234 et seq.; *Fowler, supra,* or that indicate that deputies in a given county are under the umbrella of such a personnel system for that county's employees generally, *see, e.g.,* ALA.CODE § 45–5–120; *Haddler, supra; Limbaugh v. Johnston,* 393 So.2d 963, 964 (Ala.1981) (stating that a deputy sheriff was "a classified employee of Jefferson County, subject to and governed by the civil service laws relating to Jefferson County employees and the rules and regulations of the Jefferson County Personnel Board."). Further, even where a merit system would not otherwise apply, courts have acknowledged that a property interest may arise where a county sheriff manifests an intent to be bound by policies and procedures limiting his right to discipline or discharge his deputies except for "cause." *See Mack; Key, supra.* Because Plaintiff has failed to plead facts supporting the existence of any of those scenarios as it applies to deputies in Bibb County,

the undersigned ultimately agrees with Hannah that Plaintiff is not subject to merit system protection under ALA.CODE § 45–4–120 or otherwise that he did not, therefore, have a property interest in his job. Nonetheless, no published decision of an Alabama state or federal court appears to have interpreted that statute or otherwise addressed the rights of a deputy sheriff from Bibb County as they relate to due process or continued employment more generally. Further, the Alabama Supreme Court has recently noted some potential uncertainty as it relates to whether deputy sheriffs are subject to civil service protections afforded county employees. *See Fraternal Order of Police, Lodge No. 64 v. Personnel Bd. of Jefferson County,* 103 So.3d 17, 20 n. 3 (Ala.2012); *cf. Etowah County Com'n v. Grant,* 10 So.3d 1009, 1012–13 (Ala.Civ.App.2007) (holding that deputy sheriffs were "in the service of the county," rather than "in the service of the state," for purposes of determining their entitlement to overtime compensation under ALA.CODE §§ 36–21–4 or –4.1, distinguishing *Whitten* and *Mack, supra* ). As a result, the legal basis of Plaintiff's claims was at least sufficiently in doubt to preclude his due process cause of action from being characterized as "frivolous, unreasonable, or without foundation." Hannah's application for attorney's fees is thus due to be denied.

## V. RECOMMENDATION

Based on the foregoing, it is hereby **RECOMMENDED** that Defendant Hannah's motion (Doc. 12) be **DENIED** to the extent it asks the court to strike certain allegations of the Amended Complaint pursuant to FED.R.CIV.P. 12(f), be **GRANTED** insofar as it seeks dismissal of Plaintiff's claims for damages and backpay for lack of jurisdiction under FED.R.CIV.P. 12(b)(1); be **GRANTED** insofar as seeks dismissal of all remaining claims pursuant to FED.

R.CIV.P. 12(b)(6); and be **DENIED** as it relates to an award of attorney fees under 42 U.S.C. § 1988.

### *Notice of Right to Object*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed.R.Civ.P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.